**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRENDA SIMS,

                     CASE NO. 16-11381

       *Plaintiff*,          DISTRICT JUDGE ROBERT H. CLELAND

*v.*                      MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

       *Defendant.*

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS**
**MOTIONS FOR SUMMARY JUDGMENT (Docs. 11, 13)**

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Sims is not disabled. Accordingly, **IT IS RECOMMENDED** that Sims's Motion for Summary Judgment, (Doc. 11), be **DENIED**, the Commissioner's Motion, (Doc. 13), be **GRANTED**, and that this case be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Brenda Sims's ("Sims") claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. § 401 *et seq.*, and Supplemental Security Income Benefits ("SSI") under Title XVI, 42 U.S.C. §

1381 *et seq*. (Doc. 4). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 13).

On November 6, 2013, Sims filed applications for DIB and SSI, alleging a disability onset date of August 24, 2013. (Tr. 153-65). She refiled these applications on November 20, 2013, (Tr. 166-72), and December 7, 2013, (Tr. 173-78). The Commissioner denied her claims. (Tr. 64-95). Sims then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on June 15, 2015 before ALJ Jerome Blum. (Tr. 34-63). At the hearing, Sims—represented by her attorney, Ms. Daniels—testified to her claims. (*Id.*). The ALJ's written decision, issued August 13, 2015, found Sims not disabled. (Tr. 16-33). On February 22, 2016, the Appeals Council denied review, (Tr. 1-3), and Sims filed for judicial review of that final decision on April 18, 2016. (Doc. 1).

**B.     Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.      Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

3

>   Step Three:  If the claimant is not performing substantial
>   gainful activity, has a severe impairment that is expected to last
>   for at least twelve months, and the severe impairment meets or
>   equals one of the impairments listed in the regulations, the
>   claimant is conclusively presumed to be disabled regardless of
>   age, education or work experience.
>
>   Step Four:  If the claimant is able to perform his or her past
>   relevant work, benefits are denied without further analysis.
>
>   Step Five:  Even if the claimant is unable to perform his or her
>   past relevant work, if other work exists in the national economy
>   that plaintiff can perform, in view of his or her age, education,
>   and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R.

4

404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.        ALJ Findings

Following the five-step sequential analysis, the ALJ found Sims not disabled under the Act. (Tr. 16-33). At Step One, the ALJ found that Sims had not engaged in substantial gainful activity since her alleged onset date of August 24, 2013. (Tr. 21). At Step Two, the ALJ concluded that Sims had the following medically determinable impairments: "history of nonsevere ischemic CVA; hypertension; diabetes mellitus; hyperlipidemia; and macular edema of the right eye; retinopathy; and depression . . . ." (*Id.*). The ALJ also decided, however, that none of these had "significantly limited (or [was] expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months," and therefore that Sims did not have "a severe impairment or combination of impairments . . . ." (*Id.*). After discussing his reasoning behind this finding, (Tr. 21-27), the ALJ ended his analysis and found that Sims had "not been under a disability, as defined in the Social Security Act, from August 24, 2013, through the date of this decision . . . ."). (Tr. 27).

### E.        Administrative Record

#### 1.        Medical Evidence

The Court has reviewed Sims's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

## 2.   Application Reports and Administrative Hearing

### i.   Function Report

On October 8, 2013, Sims filled out a Function Report. Describing her conditions, she wrote, "I am unable to perform work due to several major illnesses: major stroke, on the right side that temporar[ily] and permanently damage my ability to lift or perform various duties; I am currently blind in my left eye; [h]igh blood pressure; [d]iabetic [t]ype (2); sleep disorder; [b]ack pain; in addition suffering from anxiety." (Tr. 223). In a typical day, her daughters "prepare my breakfast, and assist me with distributing my medication," as well with "dressing me" and other errands. (Tr. 224). Her "leg pain" kept her awake "most nights, . . ." (*Id.*). Before the onset of her conditions, she was "totally independent, could get the bus to work, kept house chores," and "prepared meals." (*Id.*).

Sims reported needing considerable assistance with her daily activities. Per her notes, "my daughters assist me with putting on heavy materials" while dressing, her "arm gives out when washing [her] full body," and her "daughter takes me to get my hair done," although she remains "able to feed myself" and "able to use the toilet." (*Id.*). Her daughter and son have to remind Sims to shave and attend to her personal needs on occasion, as well as to attend appointments and take her medicine. (Tr. 225). Although Sims avers an ability to cook, she limits this to making sandwiches once weekly, which takes "one hour." (*Id.*). She does laundry and dishes, but otherwise remains "unable to complete house chores due

to illness." (*Id.*). She does not drive, and leaves her house only three times a week to attend therapy. (Tr. 226). Nevertheless, she is able to go grocery shopping for three hours bi-weekly, pay bills, count change, handle a savings account, and use a checkbook or money orders. (*Id.*). At the time of her writing, Sims's daughter held "[t]emporary power of attorney to adhere to my financial needs." (Tr. 227).

As hobbies, Sims listed "[w]atching TV, [r]eading, play[ing] card[s]," and "walking." (*Id.*). Since the onset of her illness, "it takes me longer to choose a card," her "[r]eading comprehension is very low," and she does not "walk as fast as I use[d] to." (*Id.*). Every other day, she speaks on the phone with others, but has not "attended any social events with the exception of holiday gatherings with family." (*Id.*).

Sims described difficulty getting along with others at times because she "suffer[s] from severe mood swings," as "friends and family members" have told her. (Tr. 228). Physical difficulties with lifting, squatting, standing, reaching, walking, stair climbing, seeing, memory, concentration, understanding, following instructions accompany her social struggles. (*Id.*). "I can only lift 5 – 10 pounds, and only walk 1 block, can only walk up 5 stairs. It's taking me a long time to comprehend in reading or some conversations." (*Id.*). Asked how well she handles stress, Sims wrote that she suffers from "mild anxiety." (Tr. 229). She then indicated that she used a walker and a cane to ambulate—prescribed to her "in the hospital . . . in September 2013"—as well as eyeglasses. (*Id.*).

### ii.     Testimony at the Administrative Hearing

Sims opened her testimony by asserting "I'm unable to return to work because I can't do the job . . . that I used to do." (Tr. 39). "It was a fast job," requiring her "to take

7

out the trolleys" used on airplanes, "put them on a dishwashing machine," and then to "clean the whole trolleys out to put it back together, and put the food in them." (*Id.*). Her work did not require her to climb into planes, though she had "to move around the building a lot." (Tr. 40). At times she had to lift "about 50 pounds or more." (Tr. 43). But she stopped in 2013 because she "had a stroke." (*Id.*). This episode, she alleged, resulted in numbness in her right hand and leg. (Tr. 44). It also impacted her sleep, "because the medicine I'm taking makes me sleepy," and caused her to nap throughout "[e]very day." (Tr. 56).

Sims also testified to being blind in one eye. (Tr. 49). Due to this problem, she did not drive. (*Id.*). The blindness had exacerbated "when the sun hit" over the past year. (*Id.*). Unfortunately, she lacked the paperwork to demonstrate this at the hearing. (Td. 51-54). She noted that her diabetes was "going along good, pretty good," as well as her blood pressure. (Tr. 54). Pain in her legs and arms prevented her from lifting more than ten pounds, although her doctor indicated that this "might get better over time." (Tr. 55). These conditions prevented her, she said, from doing yard work, house work, or grocery shopping, because "I stand up maybe 15 minutes, and I sit down." (Tr. 57).

Following the stroke, Sims remained on "the books" at her job via Family and Medical Leave, but ceased laboring. (Tr. 47). Her insurance, Cigna, was "going to end soon" at the time of the hearing, which would leave her without "any income" or method with which to pay for medical care. (Tr. 46).

### F.     Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various

8

categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to

"other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

10

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is

measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).

A hypothetical question to the VE is valid if it includes all credible limitations developed

prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.

1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D.

Mich. Dec. 9, 2009).

### G.     Analysis

Sims articulates four arguments in her Motion: (1) the ALJ should have obtained an

updated opinion from a medical advisor under SSR 96-6p, (Doc. 11 at ID 766-68); (2) the

ALJ did not accord adequate weight to Sims's treating physician under 20 C.F.R. §

404.1527, (Doc. 11 at ID 768-70); (3) the ALJ failed to comply with SSR 96-8p in failing

to include a 'function-by-function' analysis in his RFC finding, (Doc. 11 at ID 770-72);

and (4) the ALJ improperly assessed Sims's mental RFC pursuant to SSR 96-8p and SSR

85-15, (Doc. 11 at ID 772-74). Defendant's riposte suggests that—because the ALJ

concluded his analysis at Step Two—SSR 96-6p, SSR 96-8p, and SSR 85-15 simply do

not apply. (Doc. 13 at ID 784, 789). Rather, Defendant contends that the proper question

is whether substantial evidence bolsters the ALJ's declination to find any of Sims's

impairments severe, and that because it does, the ALJ was justified in ending his analysis

at Step Two. (Doc. 13 at ID 789-99).

"If the ALJ determines at Step [Two] that the claimant does not have any severe

impairments, the analysis ends and the claimant is found to be not disabled." *Hemingway*

*v. Comm'r of Soc. Sec.*, No. 14-cv-12184, 2015 WL 4967060, at *10 (E.D. Mich. Aug. 19,

2015); 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, . . . [i]f you do not have a severe

medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled."); *e.g.*, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) ("If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."). Of course, a review-terminating finding must be supported by substantial evidence. *See, e.g.*, *Williamson v. Sec'y of Health & Human Servs.*, 796 F.2d 146, 151 (6th Cir. 1986) ("[I]f a claimant arguably satisfies the criteria of a listed impairment . . . it is not proper to preclude a consideration of the listing by finding the impairment non-severe at the second stage of the inquiry.").

Defendant is correct in noting that none of the Social Security Rulings on which Sims relies govern at Step Two of the sequential analysis. *E.g. Beaune v. Colvin*, No. 14-cv-174-PB, 2015 WL 4205251, at *2 (D.N.H. July 10, 2015) ("ALJs evaluate the 'paragraph B' criteria at steps two and three of the five-step sequential process, in contrast to the SSR 96-8p function-by-function assessment, which is performed at steps four and five."); *Fowler v. Comm'r of Soc. Sec.*, No. 12-12637, 2013 WL 5372883, at *12 (E.D. Mich. Sept. 25, 2013) ("SSR 96-6p describes the process by which ALJs are to make step-three determinations: . . ."); *Ratsamy v. Colvin*, No. 12-3400, 2013 WL 4446988, at *4 (E.D. Pa. Aug. 19, 2013) ("[SSR 85-15] provides guidelines to be applied *after* it has already been determined at step two that a claimant has a severe impairment."). For this reason, the sole question before this Court is whether the ALJ properly concluded at Step Two that Sims suffered no severe impairment. As I discuss below, substantial evidence

undergirds the ALJ's conclusions. I split discussion thereof into three subgroups: (1) visual impairment; (2) other physical impairments; and (3) mental impairments.

### 1.      Visual Impairment

In discussing Sims's vision problems, the ALJ noted that Sims "retained 20/30 vision in her right eye and 20/30 vision bilaterally." (Tr. 23); (Tr. 707). He recognized that Sims "received ongoing vision care . . . predat[ing] the alleged onset date," (Tr. 23)—indeed, since about 2006 when her left eye's vision slipped to 20/200, (Tr. 685)—yet "was able to work without limitation" when aided by corrective lenses. (Tr. 23-24); (Tr. 183, 198). Moreover, Sims's Function Report demonstrates that she engaged in activities requiring visual aptitude, such as crossword puzzles, watching television, and playing cards. (Tr. 227, 671). This constitutes substantial evidence to conclude that Sims suffered only nonsevere visual impairment. *See, e.g.*, 20 C.F.R. § 404.1581 ("Statutory blindness is defined in the law as central visual acuity of 20/200 or less in the *better* eye with the use of correcting lens." (emphasis added)); *cf. Lockwood v. Heckler*, 793 F.2d 1292, at *3 (6th Cir. 1986) ("[B]lindness in one eye does not constitute a severe medical impairment when the claimant has normal vision in the other eye, . . ." (citing 20 C.F.R. § 404.1581; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5 (1st Cir. 1982))).

Put simply, the ALJ justifiably found that Sims suffered no severe visual impairment.

### 2.      Other Physical Impairments

With respect to Sims's other alleged physical impairments, the ALJ similarly rested his opinion on substantial evidence. He noted, for instance, that "[t]he treatment records

15

after her treatment for stroke showed complete recovery within a short period." (Tr. 24); *see, e.g.*, (Tr. 385) (September 6, 2013: "Strength was 5 out of 5 throughout. Tone and bulk were normal."); (Tr. 418) (November 14, 2013: "[No] pain reported. P[atien]t reports independence in all [activities of daily living]."); (Tr. 494) (February 8, 2014: "[Sims] appeared to have no difficulty with hearing during our discussion and speech was clear and coherent."); (Tr. 707) (July 16, 2015: reporting no musculoskeletal, genitourinary, gastrointestinal, neurological, or cardiovascular symptoms). Citing this fact, alongside Sims's "continued activities" and medical opinions from Dr. Seibles, Dr. Hamptom-Aytch, the ALJ concluded that "[t]he evidence of record shows limitations that cause no more than minor interference with [Sims's] ability to work or did not last for the durational period of one-year [sic]." (Tr. 26). As with Sims's visual impairment, the ALJ's analysis fulfills his statutory and regulatory duties.

To this, however, Sims posits that the ALJ did not accord adequate weight to her treating physician, Dr. Hussain. According to Sims, Dr. Hussain found her unable "to [lift] 10 pounds," "use her . . . fingers on her right hand to grasp, turn, twist, or manipulate objects for" more than "2 hours" each workday, or "control her bladder . . . ." (Doc. 11 at ID 769); (Tr. 572-76). Had the ALJ granted more weight to Dr. Hussain's opinion, Sims argues, he would have found her physical impairments severe.

Evaluating medical source statements requires considering factors such as the nature of the source's examining relationship with the client, 20 C.F.R. § 404.1527(c)(1), the source's treatment relationship with the client, *id.* § (c)(2), the supportability of the source's opinion, *id.* § (c)(3), the consistency of the opinion with the record as a whole, *id.* § (c)(4),

whether the source is a specialist opining on areas within her specialty, *id.* § (c)(5), as well as "any factors" the claimant or others "bring to [the Commissioner's] attention, or of which [the Commissioner] is aware, which tend to support or contradict the opinion," *id* § (c)(6). In weighing a treating source statement, the ALJ considers the length of the treatment relationship and frequency of examination, as well as the nature and extent of the treatment relationship. *Id.* § (c)(2)(i)-(ii). Where a treating source's opinion proves "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it "controlling weight." *Id.* § (c)(2). In any case, the Commissioner "will always give good reasons. . . for the weight we give [a] treating source's opinion." *Id.*

On these facts, however, the ALJ rightfully discounted Dr. Hussain's opinion and provided good reasons for doing so. As he noted, Dr. Hussain's opinion rested on weakness in Sims's right arm and leg, which disagreed considerably with the other record evidence. (Tr. 24); *Compare, e.g.*, (Tr. 573) (checking a box that indicated Sims could lift less than ten pounds without explanation), *with* (Tr. 385, 388, 497) (showing, after physical examination, unimpaired physical strength in Sims's upper and lower extremities). In addition, and as the ALJ indicated, Dr. Hussain's opinion came without accompanying explanation on a check-box form, which deprives it of some reliability in comparison to records that identify their objective evidentiary basis. (Tr. 24-25) ("Dr. Hussain must have relied heavily upon the claimant's subjective complaints . . . ."); *accord, e.g.*, 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 565

17

(6th Cir. 2016) ("Nor is an administrative law judge bound by the conclusory statements of physicians, particularly where the statements are unsupported by detailed objective criteria and documentation in the medical record, and are inconsistent with the rest of the evidence."). And as Defendant points out, Dr. Hussain either tabled or contradicted these exacting observations only a few months later. (Tr. 544) (finding normal muscle strength, tone, and bulk in the right upper and lower extremities); *see Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441 (6th Cir. 2010) (affirming that internal inconsistency remains a reason to afford less than controlling weight to a treating source). The ALJ provided good reasons for discounting Dr. Hussain's opinion as to Sims's physical abilities.

For these reasons, the ALJ's finding of no severe physical impairment remains buttressed by substantial evidence.

### 3.    Mental Impairments

Respecting Sims's alleged mental impairments, she argues that the ALJ should not have discounted Dr. Kannaganti's opinion, which found "mostly moderate and marked functional limitations," because he "only mention[ed]" it once before declining to endorse it. (Doc. 11 at ID 773) (internal quotation marks omitted). He also, Sims avers, ignored Dr. Murphy's diagnosis of "a depressive disorder." (*Id.*). Instead, the ALJ found that Sims's mental impairment caused "no more than mild limitation in" activities of daily living, social functioning, and concentration, persistence, or pace, and underwent "no episodes of decompensation which ha[d] been of extended duration . . . ." (Tr. 26). Sims contends that this was error.

18

As an initial matter, the opinion from Dr. Kannaganti Sims suggests deserved more weight no longer graces this record "because it did not pertain to the claimant." (Tr. 688-90). That Sims now supposes the ALJ should have given it *more* weight is laughable. And although Dr. Murphy diagnosed Sims with "unspecified depressive disorder," he also found this would impose, at worst, *mild* restrictions on her functional capacities. (Tr. 489); *see Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[T]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition."). In any case, the ALJ furnished numerous reasons for disregarding Sims's allegations of mental impairment, and cited enough evidence to allow her to trace his rationale. Considering the "paragraph B" criteria pursuant to 20 C.F.R., Part 404, Subpart P, Appendix 1 § 12.00C, the ALJ observed that "[m]uch of [Sims's] mental health complaints occurred after she filed for disability and were inconsistent with previous treatment records," contributing to a "strong suspicion of exaggeration on [Sims's] part." (Tr. 26). Additionally, "[t]reatment records and physical therapy reports indicated that [Sims] regained independence in all activities of daily living by November 14, 2013," and Dr. Hampton-Aytch "found no more than mild restrictions" with respect to all functional areas described in "paragraph B." (Tr. 26). The record validates the ALJ's illustration. *E.g.*, (Tr. 229) (testifying to suffering "mild anxiety" at her hearing); (Tr. 473) (November 21, 2013: denying anxiety, depression, hallucinations, compulsive behaviors, and suicidal ideation).

For these reasons, the ALJ properly rated Sims's mental impairments nonsevere.

**H.      Conclusion**

For the reasons stated above, the Court **RECOMMENDS** the Sims's Motion for Summary Judgment, (Doc. 11), be **DENIED**, the Commissioner's Motion, (Doc. 13), be **GRANTED**, and that this case be **AFFIRMED**.

**III.   <u>REVIEW</u>**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ.

P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 23, 2017                    S/ PATRICIA T. MORRIS
                                         Patricia T. Morris
                                         United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: March 23, 2017                     By s/Kristen Castaneda
                                         Case Manager

21